UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE TRAVELERS INDEMNITY
COMPANY, et al.,

        Plaintiffs,

vs.

Case No. 04-CV-71494

HON. GEORGE CARAM STEEH

EMPLOYERS COMPANY, INC.
et al.,

        Defendants.

_____/

OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT IN PART AS TO LIABILITY AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, The Travelers Indemnity Company and The Travelers Property Casualty Company of America ("Travelers"), brought a seven count complaint against the various defendants in this case. The case comes before the Court on cross motions for summary judgment. For the reasons set forth below, summary judgment is granted in favor of plaintiffs as to liability only.

FACTUAL BACKGROUND

This case concerns workers compensation insurance coverage, used by employers to provide statutorily mandated protection to their employees for work-related injuries. In Michigan, employers unable to obtain worker's compensation insurance coverage may submit an application to the Michigan Workers Compensation Placement Facility ("Facility"). The Facility reviews the application and assigns the risk to an insurance carrier, such as plaintiffs Travelers.

Defendants Employers, Employers I, Employers II, Payroll Services, Payroll Six and Payroll Seven were professional employer organizations ("PEO"), which are now defunct. Defendant Strategic, the insurance agent which obtained the policies from Travelers on behalf of the PEOs, is a dissolved Michigan corporation. A PEO operates by contract as the general employer for all or part of a separate company's labor force. Typically, the contracting company is responsible for maintaining the work site and directing the employees with regard to their daily activities. The PEO, on the other hand, is responsible for regulatory compliance, human resources, payroll, benefits, and employee related risk management.

Employers was formed in 1998 by defendant Gregory Nehra. Ownership in Employers was transferred to defendant Sean Fulgiam in 1999. Nehra remained employed by Employers and was its registered agent. Employers was dissolved on May 30, 2003. Defendants did not produce corporate documents relating to Employers I, so the Court is not aware of the details of its incorporation. Employers II was formed in March 2000 by Fulgiam and Sabrina Asher. Fulgiam was the managing member of Employers II. (Hereinafter, Employers, Employers I and Employers II will be referred to collectively as "the Employers companies").

Payroll was formed in December 2000 by Fulgiam and Nehra. Nehra owned a 49% interest in Payroll and Fulgiam owned the remaining 51%. Payroll was dissolved on May 30, 2003. Payroll Six and Payroll Seven were created in December, 2001 by Nehra and Asher. Strategic was initially formed by Nehra, who sold his shares to his wife Kimberly in 2001. Fulgiam worked in the accounting department for several of the PEOs and Nehra worked in marketing.

The Facility assigned to Travelers the Employers, Employers I and Employers II policies after the Employers companies completed an application on or about October 17, 2000. The application was signed by Fulgiam as 100% owner of Employers, 51% owner of Employers I, and 51% owner of Employers II. Travelers issued policy No. 6KUB682X5752, and Fulgiam calculated the annual premium for this policy to be $130,943. The policy was issued on November 20, 2000. Belle Tire was not listed as a client company, and in fact it did not become a client until December, 2000, after the application was completed and the policy was first issued.

On March 14, 2001, Nehra signed an application for worker's compensation insurance for Payroll Six. Nehra listed himself as a 50% owner of Payroll Six. The Application lists the Employers companies and Strategic as having the same address as Payroll Six, but as being unrelated entities to Payroll Six. The worksheet describes employees' duties and class codes to determine the premium, but a client list is not attached in the exhibit filed with the Court. The annual premium was calculated to be $23,615, and Travelers policy No. 6KUB731X4937 was issued on April 23, 2001.

A premium rate formula is used to calculate workers compensation insurance premiums. The formula considers information such as an employer's payroll and the type of work performed. For example, shop workers have a greater risk of injury than clerical workers and therefore a higher premium is charged. Based on the information in the insured's application for insurance, an estimated premium is determined using the premium rate formula. At the conclusion of the policy an audit is conducted and the final premium is determined by using actual figures. The final premium calculations supplement the initial estimated premium, which may result in further premiums owing,

a refund to the insured, or no change in the premium charged. The insurer has the right to audit the employer during the policy period, and within three years after the policy period ends.

There are six policies at issue in this case. Three workers compensation policies were issued to defendants Employers, Employers I and Employers II. Policy No. 6KUB682X5752 was effective from October 22, 2000 to October 22, 2001. Policy No. 6EEUB682X572 was a renewal policy effective October 22, 2001 to October 21, 2002. Policy No. 6KUB779X653A was effective from October 22, 2001 to October 22, 2002, but was cancelled on October 11, 2002 for failure to pay premiums.

Defendants Payroll Services Six and Payroll Services Seven, also with the assistance of Strategic, obtained workers compensation insurance policies from Travelers. Policy No. 6KUB731X4937 was effective from March 16, 2001 to March 16, 2002. A renewal policy was effective from March 16, 2002 to March 16, 2003, and was cancelled on September 22, 2002 for failure to pay premiums. Policy No. 6JUB822X287A was effective from March 16, 2002 to March 16, 2003, and was cancelled on October 25, 2002 for failure to pay premiums.

Charles Jurcak, a premium auditor for Travelers, performed a preliminary audit of the Employers companies on January 18, 2001. At the time of the audit, Jurcak believed he had accurate and complete information from the Employers companies. Mr. Jurcak subsequently learned that Employers failed to disclose information with respect to their largest client - Belle Tire. He also testified that payroll records provided by Employers did not reconcile with their quarterly tax returns. After repeated requests for payroll and direct information from Employers went unfulfilled, Mark Mocadlo,

Director of the Residual Market Division of Travelers, instructed Jurcak to assign the Employers companies the highest rated exposure classifications that were contained within the Employers companies payroll records. This was done at the January 22, 2002 audit.

In early 2002, Travelers received a telephone call through its fraud hotline that Sean Fulgiam and Employers company were not providing proper payroll and job code classifications to Travelers. Mr. Mocadlo also learned through former employees of Strategic and the Employers companies that Nehra and Fulgiam were allocating payroll to entities previously unreported to Travelers, called Payroll Services and Payroll Services One through Five. One of the major clients allegedly hidden by Nehra and Fulgiam's companies was Belle Tire. (Plaintiff's exhibit 46). These former employees were not identified, but were described as "willing to testify."

Mr. Jurcak was assigned the preliminary audit of Payroll Six and Seven on January 22, 2002. Mary Sage, the risk manager of Payroll Six and Seven, allegedly informed Jurcak that Payroll Services One through Five did not exist. Ms. Sage testified that she did not recall that conversation. (Sage dep. 40-41, Ex. I). In fact, Payroll Services One, Two, Three, Four and Five were each formed on December 28, 2000, the same date as payroll Six and Payroll Seven. All were owned 49% by Nehra and 51% by Fulgiam. Each entity was dissolved on June 5, 2003. Jerome Urcheck, the accountant for Strategic and the defendant PEOs testified that the largest client of Payroll and Payroll Services One through Five was Belle Tire. Fulgiam testified that he believed Payroll and Payroll Services One through Five obtained workers compensation

insurance coverage under the insurance policies issued to the Employers companies. (Fulgiam dep. at 63-64).  All agree this never happened.

After Fulgiam produced tax information related to Payroll and Payroll Services One through Five, Travelers alleges the unreported payroll for Belle Tire alone was in excess of $28 million.  Travelers claims it could not obtain complete and accurate information from Fulgiam or Nehra, so it prepared a final premium calculation by means of an estimated audit based on the limited information provided by the defendant PEOs during their audits, and allocated the highest classification codes.  Defendants contend they tried to comply with the audit and plaintiffs never specifically asked for payroll information for Payroll Services, Payroll One through Five or an additional PEO, Payroll Services Eight.  Mr. Jurcak did not believe these PEOs were covered under the policies he was auditing because they were never identified by defendants.  While the Claim Notes for claims submitted under the Employers companies policies show that defendant PEOs were submitting claims for Employers companies employees working at Belle Tire locations, it is undisputed that Belle Tire was never reported as a client company.  (See, Defendants' Exhibit V).

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of

the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248,

252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

I.  Count I - Fraud

    A.  PEOs

To establish an action for fraud or misrepresentation, plaintiffs must show that: (1) defendant PEOs made one or more material misrepresentations; (2) that the representations were false; (3) that when the representations were made, the PEOs knew they were false, or they made them recklessly, without any knowledge of their truth; (4) defendant PEOs made the representations with the intention that they should be acted upon by plaintiffs; (5) plaintiffs acted in reliance upon the representations; and (6) plaintiffs were damaged.  Jim-Bob, Inc. v. Mehling, 178 Mich. App. 71, 89-90; 443 NW2d 451 (1989).

It was Sean Fulgiam who provided the payroll information that is contained in the Employers companies application on October 17, 2000.  Fulgiam admitted that he reviewed the application for accuracy when he signed it.  Plaintiff issued a policy based on the information provided by Fulgiam.

The Employers companies then contracted with Belle Tire to provide payroll and workers compensation insurance coverage for its employees, as evidenced by the agreement with a service date of December 24, 2000.  The size of Belle Tire's payroll prevented Belle Tire from becoming a client of Employers because the total payroll would have exceeded the limits under the small business tax credit.  (Fulgiam dep. at p. 61; Sherman dep. at p. 110-11).  To avoid this problem, Belle Tire's payroll was

allocated to six newly formed companies owned and operated by Fulgiam and Nehra, namely Payroll and Payroll Services One through Five.  Payroll and Payroll Services One through Five were formed on December 28, 2000 with Fulgiam as 51% owner and Nehra as 49% owner.

Fulgiam and Nehra each testified that they did not obtain workers compensation insurance for Payroll and Payroll Services One through Five.  Fulgiam testified that he believed that Payroll and Payroll Services One through Five were covered under the insurance policies issued to the Employers companies.  However, Fulgiam does not recall seeing any documents adding Payroll or Payroll Services One through Five to the Employers companies policy.  (Fulgiam dep. at p. 63).

Both risk managers for the Employers companies, Payroll and Payroll Services One through Five, first Georgia Leslie and then Mary Sage, testified that they would only have added a PEO entity to a policy at the direction of Fulgiam or Nehra, and they did not receive direction to do that with Payroll or Payroll Services One through Five.  However, both Ms. Leslie and Ms. Sage testified that they were instructed to report workers compensation claims involving Belle Tire to Travelers.

On at least two occasions, the Employers companies' workers compensation policy was updated to reflect changes to the Employers companies' business.  On February 14, 2001, the policy was amended to reflect increases in client payroll, and therefore workers compensation premiums, with premiums going from an estimated $130,943 to an estimated $413,329.  It appears that this update may have been a result of the initial audit conducted by Travelers.  At the same time, the policy was amended to include the state of Illinois as a new location where client companies were located.  On

June 14, 2001, the policy was amended again to include the state of Nevada. The fact that defendants updated the policy shows that they recognized a duty to report material changes to Travelers. The fact that defendants provided some updated information but omitted to update the policy to include their largest client, is significant evidence of fraud.

There is sufficient evidence that the defendant PEOs engaged in fraud by not adding Payroll and Payroll Services One through Five to the Travelers' policies, in the submission of claims for those uninsured entities under the Employers companies policies, and in the calculation of premiums for those entities for which workers compensation insurance was purchased. Summary judgment is granted in favor of plaintiffs on their allegations of fraud against the defendant PEOs.

B.  Sean Fulgiam and Gregory Nehra

When an officer, agent or employee of a corporation actively participates in the tortious conduct of a corporation, the individual is personally liable for the tort. Trail Clinic, P.C. v. Bloch, 114 Mich. App. 700, 709 (1982); Warren Tool Co. v. Stephenson, 11 Mich. App. 274, 300 (1968). In this case, defendants attempt to place the responsibility for reporting Belle Tire as a client to Travelers, or otherwise obtaining workers compensation insurance coverage for Payroll or Payroll Services One through Five from Travelers, on Bryan Hayward. (Fulgiam dep. at p. 64). Hayward was part of the team that brought Belle Tire to defendants for PEO services. Hayward was the salesman who set up the initial contact with Belle Tire and gathered employee and payroll information from them. (Hayward dep. pp. 18-19). Mr. Hayward testified he was not responsible for obtaining workers compensation insurance on behalf of the PEO

defendants, nor was he responsible for reporting client companies to Travelers for the purpose of obtaining insurance coverage. (Hayward dep. pp. 24-25). Furthermore, Mr. Hayward played no part in obtaining workers compensation insurance from Travelers or in calculating premiums. (Hayward dep. pp. 26-28).

Mr. Hayward further testified that he had personal knowledge that the payroll estimate reported to Travelers by Nehra and Fulgiam was lower than Belle Tire's actual payroll. For policy 6KUB682X5752, Nehra and Fulgiam only reported $1.6 million of payroll to Travelers for employee classification code 8395 - Garage Employees, while, according to Hayward, the true payroll figure for Garage Employees was in excess of $10 million, and possibly as high as $30 million. (Hayward dep. pp. 84-85, 91).

Ryan Sherman, a former customer service employee of defendants, who did computer work, testified to his suspicion that Nehra and Fulgiam underreported the payroll figures of Belle Tire. Again referring to the Garage Employees, in policy 6KUB682X5752, Mr. Sherman states that the actual payroll was "up around 20 million" as opposed to the $1.6 million estimated by Nehra and Fulgiam. (Sherman dep. p. 109). At another part of his deposition, Mr. Sherman testified that he saw the Travelers' audit which showed the total amount of payroll for Belle Tire to be around $1 or $2 million while "everybody there knew Belle Tire was a $30 million a year plus company in payroll. Well, if there is over 30 million, actually it's closer to 35 million in payroll a year, then that should have been on the audit." (Sherman dep. p. 90).

The evidence shows that the payroll estimate eventually given to Travelers by Nehra and Fulgiam was a tiny fraction of the actual payroll known to them. As majority owners of the defendant PEOs, Nehra and Fulgiam were the parties ultimately

11

responsible for providing payroll information for the purpose of obtaining workers compensation insurance, as well as for complying with the Travelers' audit. As managers and owners of these businesses, they cannot avoid responsibility for the fraud that even their own employees were aware of. The Court finds that Fulgiam and Nehra are liable for fraud individually in this case.

    C.  Strategic

Under Michigan law, "ordinarily, an independent insurance agent or broker is an agent of the insured, not the insurer." Safeco Ins. Co. of Am. v. Zervos Group, Inc., 2002 U.S. Dist. Lexis 21971 (2002), quoting Harwood v. Auto Owner Ins. Co., 211 Mich. App. 249, 254 (1995). Here, Strategic procured workers compensation insurance for the defendant PEOs. Strategic and the PEOs shared a common address. Strategic even shared a common letterhead with the Employers companies and Payroll Services. Former employees of Strategic reported full awareness of the fraud to Travelers. As an agent of the PEOs, Strategic cannot avoid the obvious, inescapable conclusion that it knowingly participated in misleading plaintiffs and is therefore liable for fraud for failing to report changes in the PEO's client information, corporate structure and payroll to plaintiff.

II.  Count II - Silent Fraud as to PEOs, Fulgiam, Nehra and Strategic

Under Michigan law, the defendants PEOs, Fulgiam, Nehra and Strategic may be liable to plaintiff for silent fraud, if each had a duty to disclose the inaccuracy in the insurance application and failed to do so. Compuware Corp. v. Moody's Investor Services, Inc., 273 F.Supp.2d 914, 915-16 (2003), citing Hord v. Environmental Research Inst., 463 Mich. 399 (2000). In a commercial transaction where one party

makes specific inquiries regarding a subject matter related to the transaction, and the other party makes representations in response to those inquiries, the other party owes a duty to disclose all material facts related to the inquiry. If the representations made in response to an inquiry are false or misleading because they are incomplete, the defendant may be held liable for silent fraud. M& D, Inc. v. McConkey, 231 Mich. App. 22, 32-33 (1998).

In this case, defendants had a duty to fully disclose all material information requested by the Facility when completing its application for workers compensation insurance coverage for the defendant PEOs. The defendants also had a duty to provide information related to the make-up and size of the PEOs' payroll for purposes of determining the insurance premium. Defendants have conceded that the payroll information provided to determine premiums was wildly inaccurate. Nehra and Fulgiam were ultimately responsible for obtaining workers compensation insurance for their PEO clients, yet, despite this duty, Nehra and Fulgiam both testified that they did not obtain workers compensation insurance for Payroll or Payroll Services One through Five. Bryan Hayward and Ryan Sherman each testified that Nehra and Fulgiam drastically underestimated the payroll for Belle Tire for the employees they did report to Travelers. It is simply impossible to conclude that they overlooked their largest client insurance needs by accident or mistake. Circumstances compel a finding that their actions were purposeful.

III.  Count III - Innocent Misrepresentation

Innocent misrepresentation is a species of fraudulent misrepresentation which eliminates the need to prove a fraudulent purpose or an intent on the part of the

defendant that the misrepresentation be acted upon by plaintiff. State-William Partnership v. Gale 169 Mich. App. 170, 178 (1988). To prevail, Travelers need only show that the defendants made an unintentional false representation, that the representation was made in connection with the making of a contract, that Travelers was damaged and that defendants benefitted from the misrepresentation. M & D, Inc. v. W.B. McConkey, 231 Mich. App. 22, 32-33 (1998).

In this case, even if the misrepresentations made by defendants were not intentional, the Court finds, at a minimum, that defendants engaged in innocent misrepresentation.

IV. Count IV - Breach of Contract as to PEOs

The insurance contracts unambiguously require defendant PEOs to pay premiums. The policies provide, "You will pay all premiums when due. You will pay the premium even if part or all of a workers compensation law is not valid." Travelers claims that defendant PEOs owe premiums in the amount of $10,830,620. There is no claim here against Strategic or Fulgiam and Nehra individually. Defendant PEOs dispute the premium calculations and want them to be recalculated based on actual payroll information using applicable classification codes.

The Court finds that the defendant PEOs are liable to Travelers for breach of contract. However, the Court is unable to calculate the premium deficiency on the record provided.

V. Count VI - Action to Pierce Corporate Veil

Plaintiffs seek to pierce the corporate veil, alleging that Fulgiam and Nehra used the PEOs' limited liability status to commit fraud. Defendants urge the Court to

conclude that state corporate veil-piercing law does not apply to LLCs. A limited liability company combines the limited liability of a corporation with the favorable tax treatment of a partnership. The members of an LLC are like shareholders of a corporation in that they are not personally liable for the debts of the company. However, the profits and losses of an LLC flow directly to its members. *See generally* Teresa Mosely Sebastian, The Michigan Limited Liability Company Act: A Viable Alternative for Michigan Business? 1993 Det. C.L. Rev. 151 (1993).

Piercing the corporate veil is a method by which courts can protect a corporation's creditors where there is a unity of interest of stockholders and the corporation, and where the stockholders have used the corporate structure to avoid legal obligations. Foodland Distributors v. Al-Naimi, 220 Mich. App. 453, 456 (1996). The theory of piercing the corporate veil should apply to LLCs in the same way it applies to corporations.

The following must be present before the corporate veil will be pierced: First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff. SCD Chemical Distr., Inc. v. Medley, 203 Mich. App. 374, 381 (1994).

In this case, by all accounts, Fulgiam and Nehra ran the show at each of the PEOs. Mr. Hayward testified that he was employed by Strategic Group, Employers Company and Payroll Services, which he considered to be one "conglomerate." (Hayward dep. p. 12). Ms. Sage and Ms. Leslie testified they never did anything without specific instruction from Fulgiam and Nehra. The corporate structure of defendants was

also very confusing, with all entities having the same address, owners and officers. In addition, there were many entities with confusingly similar names. Given the evidence it has before it, the Court concludes that the corporate entities involved were mere instrumentalities of Fulgiam and Nehra.

The PEOs and Strategic were used to commit fraud in this case. There is ample, clear and convincing, evidence of fraud discussed in detail in previous sections of this opinion.

Finally, there has been an unjust loss to the plaintiffs from being expected to provide workers compensation coverage to entities they did not agree to cover and were not paid to cover. The extent of this loss is yet to be determined, but there is sufficient evidence of injury to find that this element has been met.

VI. Count V - Unjust Enrichment and Restitution

The elements of a claim for unjust enrichment are: (1) receipt of a benefit by defendants from Travelers and (2) an inequity resulting to Travelers because of the retention of the benefit by defendants. Barber v. SMH, Inc., 202 Mich. App. 366, 375 (1993). "A court may imply a contract in order to prevent unjust enrichment, as long as there is no express contract covering the same subject matter." PSA Quality Systems, Inc. v. Sutcliffe, 256 F.Supp. 2d 698, 702 (E.D. Mich. 2003).

Fulgiam and Nehra concede that they did not personally obtain insurance coverage for Payroll Services and Payroll Services One through Five. Neither did Strategic or the defendant PEOs. No one completed an application to obtain insurance coverage for these entities or tried to add them as additional named insureds to the Travelers policies. Clearly, coverage for Payroll and Payroll Services One through Five

was not contemplated by Travelers when forming the original contract. It is also undisputed that Nehra and Fulgiam instructed their staff to report claims to Travelers for entities which never obtained insurance coverage from Travelers, and that Travelers paid these claims.

Summary judgment is granted to plaintiffs on their unjust enrichment claim against defendants as to Payroll Services and Payroll Services One through Five.

VII. Count VII - Civil Conspiracy

The elements of civil conspiracy are: (1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose (4) or an unlawful purpose by unlawful means. Mays v. Three Rivers Rubber Corp., 135 Mich. App. 42, 48 (1984). Travelers alleges that defendants collectively utilized their resources to fraudulently obtain and maintain insurance coverage under the Travelers' policies for entities that were not named insureds on the policies. This concerted action allegedly resulted in Travelers being fraudulently denied insurance premiums by the defendants. The Court finds that there is an issue of fact whether the element of concerted action has been proven in this case. Therefore, the cross motions for summary judgment on civil conspiracy are DENIED.

VIII. Damages

Plaintiffs allege that defendants did not fully cooperate during the audit attempts. Defendants respond that they gave plaintiffs everything they requested, but plaintiffs were not specific enough in their requests. With the record before it, the Court is unable to make a damages determination. The issue of damages, as well as that of civil conspiracy, will be set for trial. Counsel for the parties are ordered to appear for a

status conference to discuss any outstanding issues and to determine when the case should be set for trial. Such status conference will be held on 9/20/2006 at 2:00 p.m.

## CONCLUSION

Plaintiffs' motion for summary judgment is GRANTED as to liability only on fraud, silent fraud, innocent misrepresentation, breach of contract, action to pierce the corporate veil, and unjust enrichment. There are issues of material fact as to plaintiff's claim of civil conspiracy and damages, which must be determined at trial.

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: August 23, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on August 23, 2006, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk